1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                      FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   BRUCE EVIN TURNER,                        No.  1:15-cv00007-DAD-SKO

12              Plaintiff,

13        v.                                   ORDER GRANTING IN PART AND
                                               DENYING IN PART DEFENDANT'S
14   UNITED STATES DEPARTMENT OF               MOTION FOR SUMMARY JUDGMENT
     THE TREASURY,                             AND DENYING PLAINTIFF'S MOTION
15                                             FOR A PROTECTIVE ORDER
                Defendant.
16                                             (Doc. Nos. 23,24)

17

18        This action is before the court on defendant's motion for summary judgment (Doc. No.

19   23), and plaintiff's motion for a protective order (Doc. No. 24).  Both motions were submitted

20   without a hearing pursuant to Local Rule 230(l).  For the reasons stated below, defendant's

21   motion for summary judgment will be granted in part and denied in part and plaintiff's motion for

22   a protective order will be denied.

23                              FACTUAL BACKGROUND

24        Plaintiff Bruce Turner is a state prisoner proceeding pro se and *in forma pauperis* in this

25   action against defendant United States Department of the Treasury.  (Doc. No. 1.)  Plaintiff brings

26   this action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552(a)(4)(B), seeking

27   production of certain designated documents from the Department of the Treasury.  (*Id.*)

28   /////

                                              1

1    The following facts are undisputed on summary judgment.  On August 25, 2014, the

2    Financial Crimes Enforcement Network ("FinCEN"), a bureau of the United States Department of

3    the Treasury, received a FOIA request from plaintiff.  (Doc. Nos. 1 at 6; 23-3 at 10.)  In his

4    request, plaintiff sought records concerning himself, specifically: (i) plaintiff's savings account

5    records from a branch of Bank of America located in Riverside, California for the period of

6    January 1993 through December 1994; (ii) copies of checks and other instruments; (iii) records of

7    transactions; (iv) receipt of funds; and (v) a copy of a Currency Transaction Report ("CTR")

8    submitted by Bank of America for the sum of $100,000 in plaintiff's name.[1]  (Doc. Nos. 1 at 6;

9    23-3 at 10.)

10    On September 15, 2014, the FinCEN denied plaintiff's FOIA request.  (Doc. Nos. 1 at 7;

11    23-3 at 11.)  The agency informed plaintiff that its non-Bank Secrecy Act ("BSA")[2] records did

12    not include documents responsive to plaintiff's request, and that its BSA records were specifically

13    exempt from disclosure under FOIA.  (*Id.*)  Plaintiff appealed the denial of his FOIA request on

14    October 5, 2014.  (Doc. Nos. 1 at 7; 23-3 at 10.)  On December 8, 2014, plaintiff received a letter

15    from the FinCEN denying plaintiff's administrative appeal.  (*Id.*)  That letter informed plaintiff

16    that he could obtain judicial review in a district court where he resided pursuant to 5 U.S.C.

17    § 552(a)(4)(B).  (Doc. Nos. 1 at 7; 23-3 at 11.)  Plaintiff then commenced the present action in

18    this court.  (Doc. No. 1.)

19    Defendant filed a motion for summary judgment on June 30, 2016.  (Doc. No. 23.)  On

20    August 5, 2016, plaintiff filed his opposition (Doc. No. 25), as well as a motion seeking a

21    /////

---

22    [1] The court pauses to note that it seems somewhat odd that plaintiff is seeking his own bank
23    records, with the exception of the CTR sought, from the FinCEN of the United States Department
of the Treasury by way of a FOIA request instead of from his bank directly.  Although somewhat
24    difficult to decipher from his pro se pleadings, it appears that plaintiff seeks these records because
he believes an individual he has identified and a Bank of America employee conspired to
25    withdraw $100,000 from a savings account held in his name and to close the account.  (Doc. No.
26    25 at 4, 6.)  Plaintiff apparently believes that a CTR was issued when that bank account was
opened and that the CTR may reflect information he would find helpful in pursuing the identified
27    individual and the unknown Bank of America employee.  (*Id.*)

28    [2] Codified at 31 U.S.C. §§ 5311–5332.

1    protective order from the court authorizing defendant to file a copy of the requested CTR under

2    seal.  (Doc. No. 24).  Defendant filed its reply on August 12, 2016.  (Doc. No. 26.)

3    <u>LEGAL STANDARDS</u>

4    **I.    Summary Judgment**

5    "Most FOIA cases are resolved by the district court on summary judgment, with the

6    district court entering judgment as a matter of law." *Animal Legal Def. Fund v. U.S. Food &*

7    *Drug Admin.*, 836 F.3d 987, 989 (9th Cir. 2016) (en banc); *see also Sakamoto v. EPA*, 443 F.

8    Supp. 2d 1182, 1188 (N.D. Cal. 2006) ("It is generally recognized that summary judgment is a

9    proper avenue for resolving a FOIA claim.")  (citing *Nat'l Wildlife Fed'n v. U.S. Forest Serv.*,

10   861 F.2d 1114 (9th Cir. 1988)).  However, it has now been made clear in this circuit that usual

11   summary judgment standards apply and that "if there are genuine issues of material fact in a

12   FOIA case, the district court should proceed to a bench trial or adversary hearing." *Animal Legal*

13   *Def. Fund*, 836 F.3d at 990; *see also Cameranesi v. U.S. Dep't of Def.*, 839 F.3d 751,762 (9th Cir.

14   2016) ("We have now overruled this FOIA-specific summary judgment standard, and instead

15   apply our usual summary judgment standard.")[3]

16   Accordingly, summary judgment is appropriate here if the moving party "shows that there

17   is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

18   law." Fed. R. Civ. P. 56(a).  On a motion for summary judgment, the moving party "initially

19   bears the burden of proving the absence of a genuine issue of material fact." *In re Oracle Corp.*

20   *Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323

21   (1986)).  The moving party may meet its burden by "citing to particular parts of materials in the

22

23   [3]  Before the *en banc* decision in *Animal Legal Defense Fund,* this was not the case in the Ninth
     Circuit.  Rather, the recognized procedure was that, "[u]nlike the typical summary judgment

24   analysis," "in a FOIA case, we do not ask whether there is a genuine issue of material fact,
     because the facts are rarely in dispute." *Minier v. CIA*, 88 F.3d 796, 800 (9th Cir. 1996).  Rather,

25   the question was whether "an adequate factual basis" exists "upon which to base [a] decision" on
     the FOIA claim at issue. *Id.; see also Fiduccia v. U.S. Dep't of Justice*, 185 F.3d 1035, 1040 (9th

26   Cir. 1999).  It was also recognized that government affidavits could supply the requisite factual
     basis. *Lane v. Dep't of Interior*, 523 F.3d 1128, 1135–36 (9th Cir. 2008).  Although this change

27   is legally significant, it may well be that it has no impact on the resolution of the pending motions
     or on the ultimate resolution of this FOIA action.

28

3

1    record, including depositions, documents, electronically store information, affidavits or

2    declarations, stipulations (including those made for purposes of the motion only), admission,

3    interrogatory answers, or other materials" or by showing that such materials "do not establish the

4    absence or presence of a genuine dispute, or that the adverse party cannot produce admissible

5    evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A), (B).

6          When the non-moving party bears the burden of proof at trial, "the moving party need

7    only prove that there is an absence of evidence to support the nonmoving party's case." *Oracle*

8    *Corp.*, 627 F.3d at 387 (citing *Celotex*, 477 U.S. at 325); *see also* Fed. R. Civ. P. 56(c)(1)(B).

9    Indeed, summary judgment should be entered, after adequate time for discovery and upon motion,

10   against a party who fails to make a showing sufficient to establish the existence of an element

11   essential to that party's case, and on which that party will bear the burden of proof at trial. *See*

12   *Celotex*, 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the

13   nonmoving party's case necessarily renders all other facts immaterial." *Id*. In such a

14   circumstance, summary judgment should be granted, "so long as whatever is before the district

15   court demonstrates that the standard for entry of summary judgment . . . is satisfied." *Id*. at 323.

16   **II.     Protective Orders**

17         As noted above, plaintiff has also moved for a protective order authorizing defendant to

18   file a copy of the CTR purportedly issued in his name with the court under seal.[4] All documents

19   filed with the court are presumptively public. *See San Jose Mercury News, Inc. v. U.S. Dist.*

20   *Court*, 187 F.3d 1096, 1103 (9th Cir. 1999) ("It is well-established that the fruits of pretrial

21   discovery are, in the absence of a court order to the contrary, presumptively public."). Rule 26 of

22   the Federal Rules of Civil Procedure provides a mechanism by which the parties may, in

23   appropriate circumstances, propose means of protecting the claimed confidentiality of

24   information in certain documents filed in a specific case. Fed. R. Civ. P. 26(c). Protective orders

25   pursuant to Rule 26(c) are intended to safeguard the parties and other persons in light of the broad

26

27   _____
     [4] In reality, it appears that, although styled as a motion for protective order, plaintiff is actually
     requesting that the court conduct an *in camera* review of a particular CTR. (*See* Doc. No. 24 at 2;
28   *see also* Doc. No. 25 at 4, 6.)

1  discovery rights authorized in Rule 26(b).  *United States v. CBS, Inc.*, 666 F.2d 364, 368–69 (9th

2  Cir. 1982).

3           Whether a protective order is entered in any case is subject to the discretion of the court.

4  *See Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984); *Phillips v. Gen. Motors Corp.*, 307

5  F.3d 1206, 1211 (9th Cir. 2002).  However, a protective order will not be entered absent a

6  showing of good cause. Fed. R. Civ. P. 26(c); *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d

7  1122, 1130–31 (9th Cir. 2003); *Phillips*, 307 F.3d at 1210.  The party seeking protection bears the

8  burden of showing specific prejudice or harm, including, with respect to individual documents,

9  the particular and specific need for protection.  *Phillips*, 307 F.3d at 1210-11; *San Jose Mercury*

10  *News*, 187 F.3d at 1102–03.  "If a court finds particularized harm will result from disclosure of

11  information to the public, then it balances the public and private interests to decide whether a

12  protective order is necessary."  *Phillips*, 307 F.3d at 1211.

13                                              ANALYSIS

14       **I.      Defendant's Summary Judgment Motion**

15           The Freedom of Information Act ("FOIA") establishes "a judicially enforceable right to

16  secure [government] information from possibly unwilling official hands."  *Dep't of Air Force v.*

17  *Rose*, 425 U.S. 352, 361 (1976) (citing S. Rep. No. 813, 89th Cong. (1st Sess. 1965)); *see also*

18  *Lahr v. Nat'l Transp. Safety Bd.*, 569 F.3d 964, 973 (9th Cir. 2009).  The aim of these disclosure

19  requirements is to "ensure an informed citizenry, vital to the functioning of a democratic society,

20  needed to check against corruption and to hold the governors accountable to the governed."

21  *N.L.R.B. v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978); *see also Hamdan v. U.S. Dep't*

22  *of Justice*, 797 F.3d 759, 770 (9th Cir. 2015); *Shannahan v. I.R.S.*, 672 F.3d 1142, 1148 (9th Cir.

23  2012).

24           In response to a FOIA request, a government agency must conduct a search "reasonably

25  calculated to uncover all relevant documents."  *Lahr*, 569 F.3d at 986.  To demonstrate that it has

26  conducted a reasonable search, an agency may produce "reasonably detailed, nonconclusory

27  affidavits submitted in good faith."  *Zemansky v. U.S. E.P.A.*, 767 F.2d 569, 571 (9th Cir. 1985)

28  (citing *Weisberg v. U.S. Dep't of Justice*, 745 F.2d 1476, 1485 (D.C. Cir. 1984)); *see also Lahr*,

1   569 F.3d at 986; *Citizens Comm'n on Human Rights v. Food & Drug Admin.*, 45 F.3d 1325, 1328

2   (9th Cir. 1995).

3   "At the same time, FOIA contemplates that some information may legitimately be kept

4   from the public." *Watkins v. U.S. Bureau of Customs & Border Prot.*, 643 F.3d 1189, 1194 (9th

5   Cir. 2011) (quoting *Lahr*, 569 F.3d at 973). The FOIA enumerates nine statutory exemptions

6   allowing the government to withhold documents or portions of documents. *See* U.S.C.

7   § 552(b)(1)–(9). An agency invoking a statutory exemption to justify withholding documents

8   bears the burden of demonstrating the applicability of that exception. *See U.S. Dep't of State v.*

9   *Ray*, 502 U.S. 164, 173 (1991); *Shannahan*, 672 F.3d at 1148; *Lahr*, 569 F.3d at 973; *see also*

10  *Yonemoto v. Dep't of Veterans Affairs*, 686 F.3d 681, 688 (9th Cir. 2011) ("[A]gencies are

11  typically required to submit . . . a particularized explanation of why each document falls within

12  the claimed exemption."), *rev'd on other grounds by Animal Legal Def. Fund*, 836 F.3d at 987.

13  To meet this burden, an agency may supply a reasonably detailed affidavit identifying the

14  documents withheld, the FOIA exemptions claimed, and the reason why each documents falls

15  within a claimed exemption.[5] *See Lion Raisins v. U.S. Dep't of Agric.*, 354 F.3d 1072, 1082 (9th

16  Cir. 2004), *rev'd on other grounds by Animal Legal Def. Fund*, 836 F.3d at 987. This submission

17  is typically referred to as the "Vaughn index." *Id.*; *see also Hamdan*, 797 F.3d at 769.

18  One of the exemptions specifically enumerated in the FOIA statute, Exemption 3,

19  incorporates nondisclosure provisions contained in other federal statutes. *See* 5 U.S.C.

20  § 552(b)(3). Exemption 3 permits the withholding of information "specifically exempted from

21  disclosure by statute" if that statute "requires that the matters be withheld from the public in such

22  /////

23  /////

24  _____

25  [5]  There is an exception to this rule, termed the *Glomar* exception, which applies when "confirming or denying the existence of records would itself reveal protected information."

26  *Nation Magazine v. U.S. Customs Serv.*, 71 F.3d 885, 893 (D.C. Cir. 1995); *see also Hunt v. CIA*, 981 F.2d 1116, 1118 (9th Cir. 1992). For this exception to apply, the government must

27  demonstrate that revealing the very existence of records would cause harm cognizable under a FOIA exception. *See Pickard v. Dep't of Justice*, 653 F.3d 782, 785–6 (9th Cir. 2011) (citing

28  *Wolf v. CIA*, 473 F.3d 370, 374 (D.C. Cir. 2007)).

a manner as to leave no discretion on the issue." *Id.*[6]  The Ninth Circuit has outlined a two-step inquiry for deciding Exemption 3 questions, requiring courts to analyze (i) whether the statute identified by the agency is a statute of exemption within the meaning of Exemption 3; and, if so, (ii) whether the withheld records satisfy the criteria of the exemption statute.  *See Hamdan*, 797 F.3d at 776 (citing *C.I.A. v. Sims*, 471 U.S. 159, 179 (1985)).

If an agency withholds a document pursuant to a FOIA exemption, it must nonetheless disclose any "reasonably segregable portion" of the document.  *See* 5 U.S.C. § 552(b) ("Any reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under this subsection."); *see also Mead Data Ctr., Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977) ("[N]on-exempt portions of a document must be disclosed unless they are inextricably intertwined with exempt portions."). "The burden is on the agency to establish that all reasonably segregable portions of a document have been segregated and disclosed."  *Pac. Fisheries, Inc. v. United States*, 539 F.3d 1143, 1148 (9th Cir. 2008).  An agency can meet this burden by providing the court with "a reasonably detailed description of the withheld material," and by "alleging facts sufficient to establish an exemption."  *Pac. Fisheries, Inc.*, 539 F.3d at 1148; *see also Hamdan*, 797 F.3d at 779 ("A district court must take seriously its role as a check on agency discretion, but this does not require a page-by-page review of an agency's work); *Johnson v. Exec. Office of U.S. Attorneys*, 310 F.3d 771, 776 (D.C. Cir. 2002) ("In order to demonstrate that all reasonably segregable material has been released, the agency must provide a 'detailed justification' for its non-segregability," although 'the agency is not required to provide so much detail that the exempt material would be effectively disclosed.'") (quoting *Mead Data*, 566 F.2d at 261).

Here, defendant moves for summary judgment in its favor on plaintiff's FOIA claim on two grounds.  First, defendant contends that the FinCEN conducted a search reasonably

---

[6]  Title 5 U.S.C. § 552(b)(3) provides, in relevant part: (b) This section does not apply to matters that are– . . . (3) specifically exempted from disclosure by statute . . . , if that statute– (A)(i) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue; or (ii) establishes particular criteria for withholding or refers to particular types of matters to be withheld; and (B) if enacted after the date of enactment of the OPEN FOIA Act of 2009, specifically cites to this paragraph."

1   calculated to uncover all non-BSA records responsive to plaintiff's request.  (Doc. No. 23-1 at 4–

2   5.)  In support of this contention, defendant points to the following evidence: (i) a declaration

3   from Gilbert Paist, a Senior Project and Program Management Advisor with the FinCEN, who

4   states that any non-BSA records responsive to plaintiff's FOIA request would have been

5   contained within the Enforcement Division's files,[7] (Doc. No. 23-3 at 1–4); (ii) a declaration from

6   Antonya Brown, a Program Administration Specialist with the FinCEN Enforcement Division,

7   who explains that the FinCEN conducted a computerized search of Enforcement Division

8   database using plaintiff's name, checked against plaintiff's social security number and date of

9   birth, and discovered no responsive records, (Doc. No. 23-4 at 2, ¶¶ 4, 7); (iii) a copy of a letter

10   from Amanda Michancyk, FinCEN Management Specialist, responding to plaintiff's initial FOIA

11   request, and informing plaintiff that FinCEN had searched its files but found no responsive non-

12   BSA records, (Doc. No. 23-3 at 8); and (iv) a copy of a letter from Frederick Reynolds, FinCEN

13   Deputy Director, informing plaintiff that the FinCEN had rejected his appeal of the agency's

14   decision denying his FOIA request, (*Id.* at 10–11).  Second, defendant argues, without citation to

15   authority, that it had no obligation to search its BSA records because such records are not subject

16   to FOIA disclosure under Exemption 3 and 31 U.S.C. § 5319.  (Doc. No. 23-1 at 6–7; Doc. No.

17   26 at 3.)

18         In opposition to defendant's motion for summary judgment, plaintiff argues in conclusory

19   fashion that the FinCEN did not make a good faith attempt to search non-BSA records for

20   documents responsive to his request.  (Doc. No. 25 at 1–2.)  Plaintiff also argues that defendant

21   violated the FOIA by not including BSA records in its search.  (*Id.*)  Finally, plaintiff contends

22   that, to the extent BSA records are exempt from the FOIA disclosure requirements, this

23   exemption does not prevent defendant from disclosing excerpts of documents that are responsive

---

24

25   [7]  As noted above, plaintiff's FOIA request sought the following five categories of documents:
(i) plaintiff's savings account records from a Riverside, California branch of Bank of America for
26   the period of January 1993 through December 1994; (ii) copies of checks and other instruments;
(iii) records of transactions; (iv) receipt of funds; and (v) a copy of a Currency Transaction Report
27   ("CTR") submitted by Bank of America for the sum of $100,000 in plaintiff's name.  Mr. Paist's
declaration establishes that if FinCEN had any records responsive to these four requests they
28   would be found within the FinCEN Enforcement Division's files.

1   to plaintiff's request.  (*Id.* at 4.)

2          The court first considers the adequacy of the search conducted by defendant of non-BSA

3   records in response to plaintiff's FOIA request.  In its motion for summary judgment, defendant

4   has submitted a number of declarations explaining the process that the agency used to search for

5   responsive documents of the non-BSA category.  For instance, the declarations submitted by

6   defendant identify the files searched, those from the FinCEN Enforcement Division.  *See*

7   *Lawyers' Comm. for Civil Rights v. U.S. Dep't of the Treasury*, 534 F. Supp. 2d 1126, 1131 (N.D.

8   Cal. 2008) (explaining that in a FOIA case, sufficient declarations describe "what records were

9   searched") (citing *Steinberg v. U.S. Dep't of Justice*, 23 F.3d 548, 551 (D.C. Cir. 1994)).

10  Defendant's declarations explain that the search for non-BSA documents was conducted through

11  a computerized survey, and specify the terms used to conduct this computerized search.  *See*

12  *McCash v. CIA*, No. 5:15-cv-02308-EJD, 2016 WL 6650389, at *6–7 (N.D. Cal. Nov. 10, 2016)

13  (finding that defendant met its burden to show the adequacy of a search conducted in response to

14  a FOIA request, because it "described with particularity the office responsible for the search, the

15  database it searched, the process it used to search—including the search terms used—and the

16  results of the search"); *Hiken v. Dep't of Defense*, 521 F. Supp. 2d 1047, 1054 (N.D. Cal. 2007)

17  ("The disclosure of search terms and a declarant's assurances that the search covered all relevant

18  files may be helpful in evaluating the adequacy of the search."); *cf. Lion Raisins, Inc.*, 636 F.

19  Supp. 2d at1105 (finding defendant's FOIA search inadequate in part because the affidavits

20  provided by defendant "do[] not mention whether, or what, search terms or key words were

21  utilized").

22          In his opposition to the summary judgment motion, plaintiff has not come forward with

23  any "meaningful evidentiary showing" that the defendant's search of non-BSA records was

24  inadequate.  *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 175 (2004) ("Allegations

25  of government misconduct are easy to allege and hard to disprove, so courts must insist on a

26  meaningful evidentiary showing.") (internal quotation marks and citation omitted); *see also*

27  *Hamdan*, 797 F.3d at 770 ("Affidavits submitted by an agency to demonstrate the adequacy of its

28  response are presumed to be in good faith."); *Lahr*, 569 F.3d at 987–88 (finding that an agency

9

1    had conducted an adequate search in response to a FOIA request, after finding that there was "no

2    evidence of either agency's bad faith in conducting their searches, and [that], aside from his

3    general allegations of government cover-up, [plaintiff] presents no evidence [to the contrary]").

4    Plaintiff has also not come forward with any evidence that that the agency failed to produce

5    documents that were discovered during the search that they have described.  *See Lahr*, 569 F.3d at

6    988 n.24 ("The government, of course, must produce responsive documents actually uncovered in

7    a search, unless one of FOIA's exemptions applies."); *cf. Hamdan*, 797 F.3d at 771 ("[A] search

8    is not inadequate for failure to turn up a single document.").

9            In light of the evidence submitted by defendant on summary judgment and plaintiff's

10   failure to make any evidentiary showing in response, the court concludes that defendant has

11   satisfied its burden of establishing the adequacy of its search of non-BSA FinCEN Enforcement

12   Division files made in connection with plaintiff's FOIA request.  Defendant has also established

13   that as a result of its appropriate search, no records responsive to plaintiff's FOIA requests

14   numbered one through four were located.  Plaintiff has not presented any contrary evidence or

15   any evidence of bad faith on the part of the agency.  *See Elec. Privacy Info. Ctr. v. Fed. Bureau of*

16   *Investigation*, __F. Supp. 3d__, 2017 WL 680370, at *3 (D.D.C. Feb. 21, 2017) ("To successfully

17   challenge an agency's showing that it complied with the FOIA, the plaintiff must come forward

18   with 'specific facts' demonstrating that there is a genuine issue with respect to whether the

19   agency has improperly withheld extant agency records.") (citation omitted); *Civil Beat Law Ctr.*

20   *for the Pub. Interest, Inc. v. Ctr. for Disease Control & Prevention*, __F. Supp. 3d__, 2016 WL

21   6155358, at *9 (D. Haw. Aug. 30, 2016).  Accordingly, defendant's motion for summary

22   judgment will be granted with respect to plaintiff's FOIA requests one through four.

23           With respect to plaintiff's FOIA request for a copy of a CTR submitted by Bank of

24   America in his name, however, the court is not persuaded that defendant properly excluded BSA

25   records from the search it conducted.  In its summary judgment motion, defendant invokes

26   Exemption 3 and 31 U.S.C. § 5319 as grounds for nondisclosure of any and all BSA records.

27   Though it appears likely defendant may ultimately prevail on that ground, it has cited no authority

28   for the proposition that it was under no obligation to search the BSA records in response to

10

1    plaintiff's FOIA request, and the court has found no such authority.

2            As noted above, the applicable two-step inquiry in deciding Exemption 3 questions

3    requires the court first to consider whether the statute identified by the agency represents an

4    Exemption 3 withholding statute, *and then to analyze whether records withheld by the*

5    *government satisfy the exemption statute's criteria*.  *See Hamdan*, 797 F.3d at 776 (emphasis

6    added).  It is certainly true that under the BSA, CTRs and other "financial institution reports and

7    records of reports of transactions involving the payment, receipt or transfer of United States coins

8    and currency" are exempt from FOIA disclosure.  *See Council on Am.-Islamic Relations v. F.B.I.*,

9    749 F. Supp. 2d 1104, 1117 (S.D. Cal. 2010); *Berger v. I.R.S.*, 487 F. Supp. 482, 496 (D. N.J.

10   2007) ("Congress explicitly precluded disclosure of CTRs and similar reports . . . under § 5319

11   and expressly stated that covered reports would be exempt from disclosure under FOIA."), *aff'd*

12   *on other grounds*, 288 F. App'x 829 (3d Cir. 2008); *Vosburgh v. I.R.S.*, No. 93-1493-MA, 1994

13   WL 564699, at *4 (D. Or. July 5, 1994); *see also Small v. I.R.S.*, 820 F. Supp. 163, 166 (D. N.J.

14   1992).  Any such information collected pursuant to the BSA is therefore properly subject to

15   Exemption 3.  *See Council on Am.-Islamic Relations*, 749 F. Supp. 2d at 1117 (finding that

16   agency's "reli[ance] on the [BSA] to withhold information obtained from the [FinCEN]" was

17   proper) (citing *Davis v. U.S. Dep't of Justice*, No. Civ. A. 00–2457(CKK), 2003 WL 25568468,

18   at *5 (D. D.C. 2003)); *see also Berger*, 487 F. Supp. 2d at 496–97 (finding information

19   concerning cash transactions was protected from disclosure because the BSA "mandates

20   withholding in such a manner as to leave no discretion on the issue to the agency").

21           Here, however, defendant has not identified which, if any, documents were withheld in

22   response to plaintiff's FOIA request for the CTR he identified.  This is because defendant

23   categorically excluded all BSA records from its search.  (Doc. No. 23-1 at 7–8.)  Beyond the

24   conclusory characterization of these documents as "BSA records," defendant did not and could

25   not provide any information as to what records were located or how many pages of documents

26   were withheld because no search was conducted.  As noted above, an agency has the burden to

27   demonstrate why disclosure of withheld documents would violate a FOIA exemption.  In order to

28   do so, the agency must provide "reasonably detailed descriptions" of documents withheld as well

                                                    11

1   as facts sufficient to establish the exemption. *Pac. Fisheries, Inc.*, 539 F.3d at 1148; *see also*

2   *Wiener v. F.B.I.*, 843 F.2d 972, 983 (finding that a CIA affidavit was inadequate to support

3   withholding under Exemption 3 because it "fail[ed] to discuss the facts or reasoning upon which

4   [defendant] based [its] conclusion"); *see also Stolt-Nielsen Transp. Group Ltd. v. United States*,

5   534 F.3d 728, 734 (D.C. Cir. 2008) (finding that the government could not withhold information

6   requested under FOIA merely by providing an affidavit stating in conclusory fashion that the

7   documents withheld were subject to nondisclosure under Exemption 3).  It would appear that,

8   without conducting a search of its BSA documents in response to plaintiff's request, defendant

9   cannot meet this burden.  *See Hamdan*, 797 F.3d at 780 ("An agency must describe the document

10  or information being withheld in sufficient detail to allow the plaintiffs and the court to determine

11  whether the facts alleged establish the corresponding exemption"); *see also Morley v. CIA*, 508

12  F.3d 1108, 1122 (D.C. Cir. 2007) ("[W]hen an agency seeks to withhold information, it must

13  provide 'a relatively detailed justification"); *Boyd v. Exec. Office for U.S. Att'ys*, 87 F. Supp. 3d

14  58, 90 (D.D.C. 2015) ("Treasury states that it applied Exemption 3 in conjunction with the [BSA]

15  to withhold 'references to information collected pursuant to the Bank Secrecy Act.' . . .

16  Treasury's description of this withholding is not sufficient: the agency has failed to provide even

17  a general description of the relevant records or the type of information withheld.").

18      Defendant's position that it was under no obligation to search BSA records in its

19  possession because the requested CTR is exempt from disclosure under FOIA, finds no support in

20  the cases addressing similar FOIA requests.  In each of those cases it appears that although the

21  agency was found to have properly withheld the documents in question (including CTRs), that

22  determination was based upon the agency's search of the records followed by a reasonably

23  detailed description of the documents being withheld as well as facts sufficient to establish the

24  applicability of the claimed exemption.  *See Berger*, 487 F. Supp. 2d at 496 (finding that the IRS

25  properly withheld records under Exemption 3 pursuant to the BSA non-disclosure provision,

26  when it explained the number of documents withheld, identified those documents as Currency

27  and Banking Retrieval System ("CBRS") summaries and CBRS CTRs, and disclosed portions of

28  withheld documents after finding they contained information not derived or extracted directly

1    from non-disclosable records); *Sciba v. Bd. of Governors of the Fed. Reserve Sys.*, No. Civ.A. 04-

2    1011, 2005 WL 3201206, at *3–4 (D.D.C. Nov. 4, 2005) (finding that an agency properly

3    withheld records under Exemption 3 pursuant to the BSA when it specifically identified the

4    withheld documents as including three Suspicious Activity Reports and four CTRs); *Linn v. U.S.

5    Dep't of Justice*, Civ. A. No. 92-1406, 1995 WL 631847, at *29–30 (D.D.C. Aug. 22, 1995) (IRS

6    invocation of Exemption 3 and 31 U.S.C. § 5319 as the basis for withholding a CTR in response

7    to a FOIA request, supported by the declaration of an IRS attorney, found to be proper on

8    summary judgment); *Vosburgh*, 1994 WL 564699, at *2, 4 (concluding defendants lawfully

9    withheld CTRs pursuant to the FOIA Exemption 3 and 31 U.S.C.§ 5319 based upon three IRS

10   affidavits describing the withheld documents and the basis for invoking the exemption); *Small*,

11   820 F. Supp. at 166 (granting summary judgment, concluding that seven specific pages were

12   exempt from disclosure under FOIA because they contained information from TECS and

13   CBRS).[8]

14        For these reasons, defendant's motion for summary judgment will be denied as to

15   plaintiff's fifth numbered request for a copy of the identified CTR without prejudice to the

16   defendant's filing of a new, properly supported motion for summary judgment addressing the

17   deficiencies noted above.[9]

18   [8]  The court acknowledges it has been recognized that "Exemption 3 differs from other FOIA
19   exemptions in that its applicability depends less on the detailed factual contents of specific
     documents; the sole issue for decision is the existence of a relevant statute and the inclusion of
20   withheld material within the statute's coverage." *Bloomer v. U.S. Dep't of Homeland Sec.*, 870 F.
     Supp.2d 358, 365 (D. Vt. 2012) (quoting *Wilner v. NSA*, 592 F.3d 60, 72 (2d Cir. 2009)).
21   Nonetheless, the court has been unable to find any authority for the government's proposition that
22   no search need be conducted of certain categories of documents and that therefore no description
     of documents withheld, or of why the claimed exemption applies to them, need be provided.  If
23   the government is aware of such authority it may, of course, move to reconsider.

24   [9]  The court recognizes that it may be defendant's position that a CTR contains no segregable
25   portion and that the entire document is exempt from disclosure under FOIA.  However, that
     question is unaddressed in the briefing now before the court.  Accordingly, in any subsequent
26   motion defendant may elect to file, counsel is directed to also address whether segregability
     applies where Exemption 3 and 31 U.S.C. § 5319 are invoked with respect to a request for a CTR.
27   That doctrine requires a determination of whether there were any segregable portions of
     documents that could be released, or whether all portions of the documents in question were
28   "inextricably intertwined" with exempt portions so as to justify their non-disclosure.  *Mead Data*,

1   **II.      Plaintiff's Motion for a Protective Order**

2           As noted, plaintiff has moved for a protective order requesting that the FinCEN be granted

3   "leave to lodge with the Court a copy of Plaintiff's [CTR] in its Data-base . . . under Exemption

4   or seal." (Doc. No. 24.)  It appears that plaintiff is actually requesting that the court order

5   production of the requested CTR for the court's *in camera* review.  (*See* Doc. No. 24 at 2; *see*

6   *also* Doc. No. 25 at 4, 6.)  "FOIA provides district courts the option to conduct *in camera* review,

7   5 U.S.C. § 552(a)(4)(B)."  *Larson v. Dep't of State*, 565 F.3d 857, 869 (D.C. Cir. 2009).

8   However, "[*i*]*n camera* inspection of documents is disfavored" and the government normally

9   should attempt to sustain its burden of proof by affidavit.  *Lion Raisins*, 354 F.3d at 1079; *Pusa v.*

10  *Fed. Bureau of Investigation*, No. CV 13-04658 BRO (PLAx), 2015 WL 10939781, at *5 (C.D.

11  Cal. Mar. 30, 2015).  Here, the remaining issue—plaintiff's FOIA request for a particular CTR—

12  does not involve a lack of specificity in the declarations submitted by defendant.  Rather, that

13  issue remains unresolved because defendant initially took the position that it need not search its

14  BSA records and therefore did not submit a declaration addressing what, if anything, was

15  discovered and withheld pursuant to an exemption.  It would seem that this deficiency can be

16  cured and that *in camera* review of any document or documents should not be necessary.

17          Accordingly, plaintiff's request for a protective order, construed as a request for *in camera*

18  review, will be denied without prejudice.

19                                                    CONCLUSION

20          For all of the reasons set forth above:

21  1.  Defendant's motion for summary judgment (Doc. No. 23) is granted with respect to

22          plaintiff's FOIA requests numbered one through four;

23  _____

24  566 F.2d at 260.  If the doctrine does apply here, the court must be able to determine from the
    defendant's declarations whether there were reasonably segregable portions of documents subject
    to Exemption 3 that were nonetheless releasable.  *See Pac. Fisheries, Inc.*, 539 F.3d at 1148; *see*

25  *also Stolt-Nielsen Transp. Group Ltd*., 534 F.3d at 734 ("The [government agency's] conclusion
    on a matter of law is not sufficient support for a court to conclude that the self-serving conclusion

26  is the correct one."); *Johnson*, 310 F.3d at 776 ("In order to demonstrate that all reasonably

27  segregable material has been released, the agency must provide a 'detailed justification' for its
    non-segregability," although 'the agency is not required to provide so much detail that the exempt

28  material would be effectively disclosed.'") (quoting *Mead Data*, 566 F.2d at 261).

14

2.   Defendant's motion for summary judgment (Doc. No. 23) is denied with respect to plaintiff's FOIA requests number five, without prejudice to the filing of a properly supported motion for summary judgment as to that aspect of plaintiff's FOIA request;

3.   Plaintiff's motion for a protective order (Doc. No. 24) is denied;

4.   Within thirty (30) days of the date of this order, counsel shall advise the court of whether defendant intends to file another motion or believes the matter instead should be set for trial or adversarial hearing.[10]  *See Animal Legal Def. Fund*, 836 F.3d at 990.  If the former, defendant shall also advise the court of a proposed date by which that motion will be filed as well as the nature of the motion and the court will then issue an order setting a briefing schedule.

IT IS SO ORDERED.

Dated:   __**March 23, 2017**__                                            _____
                                                                                          UNITED STATES DISTRICT JUDGE

_____

[10]  The court notes that on November 14, 2016, plaintiff filed a demand for jury trial in this action and therein estimated that the trial of the matter "should only take 5 to 10 days to complete." (Doc. No. 27 at 1.)  However, as observed above, the court is not yet convinced that there are disputed issues of material fact in connection with this action which require resolution by bench trial or adversarial hearing as opposed to summary judgment.

15